1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   SUNNI ALI SHABAZZ,                      No C 03-2071  VRW

13           Plaintiff,                              ORDER

14           v

15   OAKLAND UNIFIED SCHOOL DISTRICT,

16

17           Defendant.

18   _____/

19           Plaintiff Sunni Ali Shabazz alleges that defendant

20   Oakland Unified School District (OUSD) terminated him based on his

21   race and religion in violation of federal and California law.  Doc

22   #13 (First Am Compl) (FAC).  OUSD moves for summary judgment in its

23   favor on all of the claims alleged in the FAC.  Doc #35 (MSJ).

24   Shabazz opposes.  Doc #40 (Opp).  Because the court finds this

25   matter suitable for decision without oral argument, the hearing

26   scheduled for June 23, 2005, is VACATED.  Civ L R 7-1(b).  Based on

27   the parties' memoranda and the applicable law, the court GRANTS

28   OUSD's motion.

United States District Court

For the Northern District of California

I

Shabazz is an African-American Muslim.  FAC at 2.  On January 21, 2001, OUSD hired Shabazz as a temporary teacher at Stonehurst Elementary School (SES).  Id at 3.  Wilhelmina Santamaria (Santamaria) became the SES principal in September 2001.  Id.

The heart of this case lies in the events that occurred on December 4, 2001, at an SES school assembly.  According to OUSD, while Shabazz was in the SES auditorium, another teacher, Samuel Martinez (Martinez), observed one of Shabazz's students repeatedly strike another student.  Martinez took the student to Shabazz and inquired whether Shabazz wanted to discipline the student.  Shabazz declined, stating that he had not witnessed the incident.  MSJ at 2.  Shabazz does not dispute these facts.  Shabazz alleges, however, that Martinez then took the student to the principal's office and as he walked away from Shabazz, Martinez stated that Shabazz was "being a nigger."  Compl at 3; Doc #35 (Combs Decl) Ex B (Shabazz Depo) at 113:15.  Martinez vehemently denies that he called Shabazz a nigger.  MSJ at 2.

According to OUSD, after Martinez allegedly called Shabazz a nigger, Shabazz followed Martinez into the school's main office where he confronted Martinez and began to raise his voice and became "completely uncontrollable, volatile and threatening."  MSJ at 3.  In front of parents, students and other SES staff, Shabazz repeatedly said to Martinez:  "I am not a nigger" and "Don't treat me like a nigger."  Id.  A school security officer, Gilbert Lane, arrived in the office during the altercation.  Doc #35 (Combs Decl), Ex I (Lane Depo) at 19:19-21.  Lane states that

2

United States District Court

For the Northern District of California

1 he saw "Shabazz and Mr Martinez arguing with each other and one of

2 our teachers, Ms Jones, [was] in between them holding them back."

3 Id.  Lane testified that Shabazz was "the most upset" of the two

4 men; he was "the loudest and had a little bit more body language.".

5 Id at 22:14-20.  Lane described physically removing Shabazz from

6 the office:

7 > Q:  Were you able to remove Mr Shabazz from the office?

8 > A:  Yes, I was.

9 > Q:  Did you have to touch him or grab him to do that?

10 > A:  Yes, I did.

11 > Q:  He didn't want to leave the office I take it?

12 > A:  True.

13 > Q:  How did you move him out of the office?

14 > A:  I grabbed him and I started pushing him back.  He spun off
> me and got away from me.  And I grabbed him again and I
15 > put my knee in his buttocks so I could push him forward
> and then pushed him outside the door.
16
17 Id, Ex J, Tr at 23:4-18.

18 Following the December 4, 2001, incident, OUSD placed Shabazz on

19 paid administrative leave.  An administrative investigation was

20 performed by Danny Shottenfeld, a labor relations analyst in OUSD's

21 Human Resources Division; Shottenfeld recommended that Shabazz be

22 terminated.  Pursuant to Shottenfeld's recommendation, on January

23 15, 2002, Shabazz was terminated.  MSJ at 3.  While it is unclear

24 how (or if) Martinez was disciplined, it appears he is still

25 employed at OUSD.

26     Shabazz does not so much dispute OUSD's version of the

27 facts as much as he attempts to mitigate or explain them.

28 Specifically, Shabazz states that:

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> Both [I] and Martinez argued in loud voices, used profanity and racial epithets, and neither one threatened or attempted to assault the other.  Although [OUSD] may claim that [my] behavior was more volatile, this is to be expected since Martinez initiated the incident by calling [me] perhaps the most inflammatory racial slur in the English language, whereas [I] did not refer to Martinez with any epithets at any time during the argument.

Opp at 10.

Accordingly, it appears undisputed that (1) Shabazz and Martinez had an argument in the main office of SES, (2) Shabazz was the more volatile of the two men during the altercation and (3) Shabazz was escorted out of the office by a security officer.  It appears the only fact in dispute regarding the events of December 4, 2001, is whether Martinez called Shabazz a "nigger" in the SES auditorium.

On May 5, 2003, Shabazz filed his original complaint in pro per in this court.  Doc #1.  On September 29, 2003, newly represented by counsel, Shabazz filed the FAC asserting seven causes of action against OUSD stemming from his January 12, 2002, termination.  Specifically, Shabazz alleges that OUSD terminated him on the basis of his race (African American) and his religion (Muslim) in violation of (1) Title VII of the Civil Rights Act of 1964, 42 USC §§ 2000e et seq (Title VII), (2) 42 USC § 1983 (§ 1983), (3) Title VI of the Civil Rights Act of 1964, 42 USC §§ 2000d et seq (Title VI), (4) the Fourteenth Amendment of the United States Constitution, US Const, Amend XIV, § 2, (5) Article I § 7(a) of the California Constitution and (6) the California Fair Housing and Employment Act, Cal Gov Code § 12980 et seq (FEHA).  Additionally, Shabazz alleges intentional infliction of emotional distress.

**4**

1    OUSD moves for summary judgment in its favor asserting
2  that there exists no genuine issue of material fact whether Shabazz
3  was terminated on the basis of his race and religion.  MSJ at 1.
4
5                                II
6          In reviewing a summary judgment motion, the court must
7  determine whether genuine issues of material fact exist, resolving
8  any doubt in favor of the party opposing the motion.  "[S]ummary
9  judgment will not lie if the dispute about a material fact is
10 'genuine,' that is, if the evidence is such that a reasonable jury
11 could return a verdict for the nonmoving party."  Anderson v
12 Liberty Lobby, 477 US 242, 248 (1986).  "Only disputes over facts
13 that might affect the outcome of the suit under the governing law
14 will properly preclude the entry of summary judgment."  Id.  And
15 the burden of establishing the absence of a genuine issue of
16 material fact lies with the moving party.  Celotex Corp v Catrett,
17 477 US 317, 322-23 (1986).  Summary judgment is granted only if the
18 moving party is entitled to judgment as a matter of law.  FRCP
19 56(c).
20         The nonmoving party may not simply rely on the pleadings,
21 however, but must produce significant probative evidence, by
22 affidavit or as otherwise provided in FRCP 56, supporting its claim
23 that a genuine issue of material fact exists.  TW Elec Serv v
24 Pacific Elec Contractors Assn, 809 F2d 626, 630 (9th Cir 1987).
25 The evidence presented by the nonmoving party "is to be believed,
26 and all justifiable inferences are to be drawn in his favor."
27 Anderson, 477 US at 255.  "[T]he judge's function is not himself to
28 weigh the evidence and determine the truth of the matter but to

                                5

United States District Court

For the Northern District of California

1    determine whether there is a genuine issue for trial."  Id at 249.

2         The evidence presented by both parties must be

3    admissible.  FRCP 56(e).  Conclusory, speculative testimony in

4    affidavits and moving papers is insufficient to raise genuine

5    issues of fact and defeat summary judgment.  <u>Thornhill Publishing

6    Co, Inc v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979).

7         Accordingly, because all evidence offered by Shabazz is

8    to be believed, the court will assume that Martinez called Shabazz

9    a "nigger" in the SES auditorium.  This assumption is of little

10   import, however, for even if Martinez used this offensive racial

11   epithet, the court concludes that OUSD is nonetheless entitled to

12   summary judgment on the issue whether Shabazz was terminated based

13   on his race and religion.

14

15                                  III

16                              *Title VII*

17        Title VII prohibits employers from terminating an

18   employee on the basis of the employee's race, color, religion, sex

19   or national origin.  42 USC § 2000e-2(a).  Shabazz asserts that

20   OUSD terminated him based on his religion <u>and</u> race and thus the

21   court will address each claim separately.

22

23                                   A

24        "A Title VII religious discrimination claim may be

25   brought under several possible theories, including disparate

26   treatment of religion or failure to accommodate religious beliefs."

27   <u>Bodett v Coxcom, Inc</u>, 366 F3d 736, 742 (9th Cir 2004) (citation

28   omitted).  It is clear that Shabazz is pursuing a disparate

                                    6

United States District Court

For the Northern District of California

treatment discrimination claim.

"Disparate treatment [religious discrimination] claims must proceed along the lines of the praxis laid out by the Supreme Court in McDonnell Douglas Corp v Green, 411 US 792 (1973), and its progeny." Id at 743. Under McDonnell Douglas, "a complainant must first establish a prima facie case of disparate treatment." Id. "Once a prima facie showing has been made, the burden shifts to the defendant to produce some evidence demonstrating a legitimate, non-discriminatory reason for the employee's termination." Id. If the defendant meets this burden, any presumption of discrimination "drops from the case" and the plaintiff must then show that the defendant's alleged reason for termination is merely a pretext for discrimination. Id. "A plaintiff 'may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Id (quoting Raad v Fairbanks North Star Borough School District, 323 F3d 1185, 1196 (9th Cir 2003)).

To establish a prima facie case of religious discrimination, Shabazz is required to show that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he experienced an adverse employment action and (4) other similarly situated employees outside of the protected class were treated more favorably. Bodett, 366 F3d at 743-44; see also Peterson v Hewlett-Packard Co, 358 F3d 599, 603 (9th Cir 2004).

The court concludes that Shabazz has made out a prima facie case of religious discrimination. First, Shabazz, as a Muslim, is a member of a protected class. Pjetrovic v Merrill

**7**

United States District Court

For the Northern District of California

1  _Lynch & Co, Inc_, 2004 US Dist LEXIS 23883, *10 n1 (S D NY 2004).

2  Next, OUSD does not assert that Shabazz was not qualified for the

3  position of temporary teacher.  Next, termination is unquestionably

4  an adverse employment action.  Finally, Martinez, a non-Muslim, was

5  treated more favorably than Shabazz; he was not terminated

6  following the December 4, 2001, altercation.

7         The burden thus shifts to OUSD to offer a legitimate,

8  nondiscriminatory reason for Shabazz's termination.  OUSD has

9  clearly satisfied this requirement.  OUSD states that Shabazz was

10 terminated based on the inappropriate conduct he exhibited on

11 December 4, 2001.  MSJ at 3-4 (stating that Shabazz was "terminated

12 from his contract because of his outburst and * * * unprofessional

13 conduct in the office of [SES]").  OUSD's proffered explanation is

14 supported by the deposition testimony of Shottenfeld, the labor

15 relations analyst who conducted the administrative investigation

16 into the December 4, 2001, incident.  Shottenfeld states that he

17 recommended Shabazz's termination based on his "investigation and

18 [] the statements put forth as a result of that investigation."

19 Doc #44 (Combs Supp Decl), Ex A (Shottenfeld Depo) at 47:18-20; see

20 also Doc #35 (Lemon-Thomas Decl), Ex B (12/4/01 Admin Leave Letter)

21 (informing Shabazz that he is being placed on administrative leave

22 "to provide [OUSD] time to conduct an investigation for improper

23 conduct" stemming from the December 4, 2001, incident).

24        Because OUSD has produced evidence demonstrating a

25 legitimate, nondiscriminatory reason for terminating Shabazz, the

26 burden shifts back to Shabazz to persuade the court that OUSD's

27 proffered reason for termination is merely a pretext for religious

28 discrimination.  The Ninth Circuit instructs that circumstantial

United States District Court

For the Northern District of California

1   evidence of pretext must be "specific" and "substantial" to survive
2   summary judgment.  Bodett, 366 F3d at 743.

3       To demonstrate that OUSD's legitimate reason for
4   terminating him was pretext for religious discrimination, Shabazz
5   asserts that on November 23, 2001, Santamaria verbally denied
6   Shabazz's request that SES hold a Ramadan sharing assembly.  Opp at
7   4.  Ramadan is a Muslim holiday.  Shabazz claims that in denying
8   his request to hold the Ramadan sharing assembly, Santamaria stated
9   that "[w]e cannot bring religion into this school."  Id.  Shabazz
10  asserts that this statement evidences Santamaria's bias against the
11  Muslim faith because a "Los Dios de Muerte [a Mexican religious
12  observance] assembly has recently taken place."  Id.

13      Assuming arguendo that this single encounter
14  substantially evidences an anti-Muslim bias on the part of
15  Santamaria (an assumption the court finds largely untenable),
16  Shabazz fails to demonstrate why Santamaria's alleged bias shows
17  that OUSD's "proffered explanation is unworthy of credence."
18  Bodett, 366 F3d at 743.  Shabazz relies on Beregne v Salt Water
19  Project Agricultural Improvement & Power District, 272 F3d 1136
20  (9th Cir 2001), for the proposition that Santamaria's putative
21  anti-Muslim bias can be imputed to OUSD human relations' decision
22  to terminate Shabazz.  Opp at 9-10.

23      In Bergene, plaintiff alleged that she was not promoted
24  by her employer in retaliation for filing a lawsuit stemming from
25  her husband's termination from the same employer.  Id at 1141.  In
26  attempting show that the employer's proffered reason for not
27  promoting her was pretextual, the Bergene plaintiff offered direct
28  evidence that her former supervisor, Wilson, had informed her of

9

United States District Court

For the Northern District of California

his retaliatory intent towards her.  Id.  The employer countered that Wilson was not the person ultimately responsible for determining whether to promote plaintiff and thus his bias could not negate the proffered legitimate reason for failure to promote plaintiff.

The Ninth Circuit disagreed, stating that "[a]lthough Pratt, [plaintiff's] immediate supervisor, was ultimately responsible for selecting the [employee to be promoted], there is evidence that Wilson played an influential role in the selection process.  Even if a manager was not the ultimate decisionmaker, that manager's retaliatory motive may be imputed to the company if the manager was involved in the hiring decision."  Id (emphasis added) (citing Dey v Colt Construction & Development Co, 28 F3d 1446, 1459-60 (7th Cir 1994)).

The court finds Bergene distinguishable.  In the present case, Shabazz offers no evidence demonstrating that Santamaria played an influential role in the decision to terminate Shabazz. The deposition of Yolanda Peeks, a former OUSD executive director who reviewed the administrative investigation into the December 4, 2001, incident, demonstrates that Santamaria was involved in Shottenfeld's administrative investigation, not his decision.  Doc #41 (Ahmad Decl), Ex E (Peeks Depo).  Specifically, it appears Santamaria aided Shottenfeld in (1) framing the avenues for investigation and (2) interviewing Martinez, Shabazz and other witnesses to the December 4, 2001, event.  Id at 35:17-21.  But there no evidence that Santamaria was involved in the decision to terminate Shabazz.  Indeed, Peeks' deposition (which was offered by Shabazz) clearly demonstrates that the review of the investigatory

10

United States District Court

For the Northern District of California

findings and the decision to terminate Shabazz was solely the
decision of Shottenfeld and the human resources department.
Id at 59:4-5 (stating that "Mr Shottenfeld would be the one
determining which actions would be taken" regarding Shabazz's
employment); id at 59:13-15 ("The final determination is what
actions are taken at [the final] point * * *.  And the final
decisions are made by the human resources department."); Id at
59:16-21 (stating that Shottenfeld is in human resources and "he
makes the decisions").

        In essence, Shabazz offers no evidence that Santamaria
was involved with Shottenfeld and the human resources department in
deciding whether to terminate Shabazz.  While Shabazz conclusorily
states that "Santamaria was significantly involved in the * * *
decision-making process that culminated in [his] termination," Opp
at 9, such speculations and conclusions do not suffice to create a
genuine issue of material fact.  Thornhill Publishing Co, 594 F2d
at 738.  There is no significant and probative evidence that
Santamaria was involved in the decision to terminate Shabazz or
that Shottenfeld even knew of her alleged refusal to hold a Ramadan
sharing assembly.

        Accordingly, Shabazz has failed to demonstrate that
OUSD's proffered legitimate, nondiscriminatory reason for
terminating him is mere pretext for religious discrimination and
thus OUSD is entitled to summary judgment.


                                B

        Based on the above logic, Shabazz's racial discrimination
claim also fails.  Shabazz succeeds in establishing a prima facie

                               11

United States District Court

For the Northern District of California

case of racial discrimination under McDonnell Douglas.  First, as an African American, Shabazz is a member of a protected class. Rodriguez v General Motors Corp, 904 F2d 531, 533 (9th Cir 1990). Next, it in undisputed that Shabazz was qualified for his teaching position and that he was terminated.  Finally, Shabazz has demonstrated that a non-African American employee that was similarly situated, Martinez, was treated more favorably (i e, Martinez was not terminated following the December 4, 2001, incident).

As explained above, OUSD succeeds in rebutting the presumption of racial discrimination by offering a legitimate, nondiscriminatory reason for Shabazz's termination:  His behavior on December 4, 2001.  Hence, the burden shifts back to Shabazz to demonstrate that the proffered reason is mere pretext for racial discrimination.

To show the legitimate reason proffered by OUSD is pretext, Shabazz again relies on a single encounter between him and Santamaria.  According to Shabazz, on September 3, 2001, he attended a staff meeting in the SES auditorium.  Opp at 3.  During the staff meeting, Santamaria "referred to [Shabazz] as 'this Shaquille O'Neal fella here."  Id.  Shabazz claims that he felt "insulted and humiliated" by Santamaria's comment and the laughter it provoked.  Id.  Later that day, when Shabazz confronted Santamaria in her office and asked for an apology, she refused, stating that she was "not afraid of black men."  Id.

Assuming that this incident evidences Santamaria's racial animus towards African Americans, as discussed above, there is no evidence that Santamaria was involved in the decision to terminate

1    Shabazz.  Accordingly, Shabazz has failed to show that the

2    legitimate reason offered by OUSD is mere pretext for racial

3    discrimination and thus OUSD is entitled to summary judgment.

4

5                                C

6          "Courts commonly use the Title VII discrimination proof

7    scheme to evaluate claims for intentional discrimination under

8    Title VI."  <u>Escobar v Montgomery County Board of Education</u>, 2001 US

9    Dist LEXIS 1069, *17-18 (D Md 2001) (citing cases).  Hence, for the

10   reasoning announced above, OUSD is entitled to summary judgment on

11   Shabazz's Title VI claim.

12

13                               IV

14            <i>§ 1983 & Federal and California Constitutions</i>

15         Shabazz alleges that OUSD violated § 1983 by terminating

16   him based on his race and religion in violation of the Fourteenth

17   Amendment of the United States Constitution.  Compl at 4.  "A

18   plaintiff who fails to establish intentional discrimination for

19   purposes of Title VII * * * fails to establish intentional

20   discrimination for purposes of [a] § 1983" claim premised on a

21   violation of the Fourteenth Amendment.  <u>Sischo-Nownejad v Mercerd</u>

22   <u>Community College District</u>, 934 F2d 1104, 1112 (9th Cir 1991)

23   (Reinhardt, J) (citing <u>Knight v Nassau County Civil Service</u>

24   <u>Commission</u>, 649 F2d 157, 161-62 (9th Cir 1981)).  Because the court

25   concludes that Shabazz has failed to raise a genuine issue of

26   material fact on his Title VII claim, he cannot survive a motion

27   for summary judgment on his § 1983 claim.

28         Inexplicably, Shabazz asserts a separate claim against

United States District Court

For the Northern District of California

13

United States District Court

For the Northern District of California

OUSD for violation of the Fourteenth Amendment.  Compl at 6.  Aside
from its redundancy, this claim fails as a matter of law because
Shabazz has failed to raise a genuine issue of material fact on his
Title VII claim.  <u>Nownejad</u>, 934 F2d at 1112.  This logic applies to
Shabazz's claim under the California Constitution as well, for it
is settled that "the California and federal tests for equal
protection are substantially the same."  <u>Sail'er Inn, Inc v Kirby</u>,
5 Cal 3d 1, 18n13 (1971).  Accordingly, OUSD is entitled to summary
judgment on both of Shabazz's constitutional claims.


                                    V

                                  *FEHA*

        Next, Shabazz asserts that OUSD violated FEHA in
terminating him based on his race and religion.  Compl at 9.
"'California has adopted the three-stage burden-shifting test
established by the United States Supreme Court for trying claims of
discrimination * * * based on a theory of disparate treatment.'"
<u>Slatkin v University of Redlands</u>, 88 Cal App 4th 1147, 1156 (2001)
(quoting <u>Guz v Bechtel Nat'l, Inc</u>, 24 Cal 4th 317, 354 (2000)).
"This test is commonly known as the <u>McDonnell Douglas</u> test * * *."
Id.  Accordingly, OUSD is entitled to summary judgment on Shabazz's
FEHA claim for the same reasons described above in connection with
Title VII.  See *supra* Part III.


                                   VI

                 *Intentional Infliction of Emotional Distress*

        OUSD asserts that, as a public entity, it enjoys immunity
from claims for intentional infliction of emotional distress.  MSJ

                                   14

United States District Court

For the Northern District of California

1   at 8.   Shabazz's opposition is silent regarding OUSD's assertion of
2   immunity and thus the court assumes that Shabazz does not oppose
3   the granting of summary judgment to OUSD on this claim.

4         For the sake of completeness, however, the court notes
5   that OUSD's immunity argument appears to be well-supported by
6   California case law.  See <u>Wright v California</u>, 122 Cal App 4th 659,
7   671 (2004) (dismissing with prejudice a plaintiff's intentional
8   infliction of emotional distress claim against the state because
9   "public entit[ies][are] not liable for tortious injury unless the
10  liability is imposed by statute.") (citing <u>Zuniga v Housing</u>
11  <u>Authority</u>, 41 Cal App 4th 82 (1995)).  Shabazz has not offered, and
12  the court has not been able to find, a California statute exposing
13  public entities to intentional infliction of emotional distress
14  claims arising from alleged employment discrimination.
15  Accordingly, OUSD is entitled to summary judgment on this claim.

16

17                            VII

18        In sum, the court GRANTS OUSD's motion for summary
19  judgment (Doc #35).  The clerk is directed to CLOSE the file and
20  TERMINATE all motions.

21

22        SO ORDERED.

23

24  _____

25  VAUGHN R WALKER

26  United States District Chief Judge

27

28

                            15